OPINION OF THE COURT
Michael D. Stallman, J.
This CPLR article 78 proceeding requires interpretation of New York City’s emergency nuisance abatement lien law. Petitioner, a contract vendee of real property, seeks a judgment compelling respondents Commissioners of the Departments of Health and Finance to discharge or cancel City liens imposed on the property for cleaning and pest control during the period 1990 through 1997. Respondents move to dismiss on grounds of standing, untimeliness, and failure to state a cause of action.
Petitioner alleges that it is the contract vendee of property under a 1998 contract of sale, which apparently has not yet closed. Prior to the contract date, and pursuant to its powers under local law, the Department of Health (DOH) performed emergency work on the property six times upon the owner’s failure to abate rat infestation, and repeatedly and unsuccessfully billed the owner. (Administrative Code of City of NY §§ 17-114, 17-144, 17-145, 17-147; 24 RCNY Appendix, Bd of Health Resolution dated Jan. 21, 1964.) The City asserts a lien on the property for the unpaid charges. (Administrative Code § 17-151.) Although it appears to have been routine practice for the Department of Health to have made contemporaneous records, some records of the subject repairs can no longer be found. It is undisputed that some records from that period were destroyed, apparently as part of the City’s routine practice of culling stale records. (NY City Charter § 1133.)
Under Administrative Code § 17-151, the amounts billed for nuisance abatement and entered in the records of the City Collector constitute liens on the property that have priority second *344 only to taxes and assessments. Section 17-151 (b) also provides: “However, no lien created pursuant to this title shall be enforced against a subsequent purchaser in good faith or mortgagee in good faith unless the requirements of subdivision a of this section are satisfied; this limitation shall only apply to transactions occurring after the date such record should have been entered pursuant to subdivision a and before the date such entry was made.” Subdivision (a) requires that the nuisance abatement records be accessible to the public.
Petitioner does not here challenge the underlying charges billed. Rather, petitioner asserts that the liens are unenforceable because respondents did not produce the original records of the work done at the premises.
Administrative Code § 17-151 can be fully understood only by reading both subdivisions (a) and (b) in pari materia. Section 17-151 is intended to establish and preserve the primacy of the City’s lien for its nuisance abatement costs against a subsequent purchaser or mortgagee irrespective of whether the Department of Health actually filed the lien. A purchaser or mortgagee who acquires an interest in real property after the Department of Health actually files a lien with the City Collector’s office is bound by the lien. (Administrative Code § 17-151 [b].) However, a purchaser or mortgagee who acquired such an interest after DOH ordered the abatement work but prior to DOH’s filing of a lien on the property will still be bound if DOH records the “purchase or work order [s]” in its office. (Administrative Code § 17-151 [a].) The Code specifically provides: “Such entry shall constitute notice to all parties.” (Id.) Once a lien is actually recorded, i.e., when the charges are filed in the office of the City Collector, a subsequent purchaser is legally on notice of the lien. Such a subsequent purchaser, by definition, is not a good-faith purchaser, and the lien is expressly enforceable against it. (Administrative Code § 17-151 [b].) The DOH recording and record-keeping requirements of Administrative Code § 17-151 (a) have no farther applicability to the lien once it is actually filed with the City Collector. (Administrative Code § 17-151 [b] [final clause].)
Petitioner is a contract vendee. Having not yet purchased the property, petitioner is not a purchaser. Petitioner is not a mortgagee of the property. Accordingly, the exemption for subsequent good-faith purchasers or mortgagees contained in Administrative Code § 17-151 (b) is inapplicable to petitioner. Neither is petitioner an owner, mortgagee nor lienor having priority under Administrative Code § 17-152 (b). While *345 petitioner appears to have an inchoate interest in the real property, it lacks standing to seek the requested relief. Even when analyzed in a light most favorable to petitioner, the petition fails to state a cause of action as a matter of law.
Petitioner contracted to purchase the property after DOH recorded the liens against the property with the City Collector. Petitioner, as a matter of law, is not a subsequent purchaser in good faith because it had legal notice of the City’s lien. (Administrative Code § 17-151 [b].) Petitioner is accordingly bound by the liens irrespective of whether the original DOH records are, or were, on file. Administrative Code § 17-151 (a) is not applicable to this case and petitioner states no viable cause of action under it.
Moreover, this proceeding is untimely. An article 78 proceeding must be commenced within four months after final determination of the challenged administrative act. The acts challenged here are the filings of the unpaid nuisance abatement charges as liens. The bills were rendered and the liens arose over a period of approximately seven years; the most recent lien is over three years old. Final determination occurred when the Department of Finance billed the owner. (See Matter of Cauldwest Realty Corp. v City of New York, 160 AD2d 489, 490 [1st Dept]; Matter of M & D Contrs. v New York City Dept. of Health, 233 AD2d 230 [1st Dept].) The rationale for using the billing date as the accrual date for statute of limitations purposes is obvious. Billing occurs after the City’s lien becomes effective under Administrative Code § 17-151; it notifies the owner that the debt is an encumbrance on the property. If a subsequent purchaser or contract vendee like the petitioner is permitted to challenge the underlying work or recordkeeping many years later, the very concept of a lien would be vitiated. The City would be prejudiced by its inability to explain the work done or the documentation process with particularity long after the owner’s repeated defaults.
The bills were rendered and the liens arose over a period of approximately seven years; the most recent lien is over three years old. It is therefore unnecessary to separately analyze the accrual dates for each of the six separate bills and the liens based on each. Suffice to say that the statute of limitations ran out long ago as to each. Although petitioner requested the underlying records in late December 2000, neither that request nor the City’s response in February 2001 revived long-expired periods of limitation.
*346 Accordingly, it is ordered and adjudged that the petition is denied and the proceeding is dismissed.